Yes, your honor. Thank you for the morning. Please the court. Tony Francois for appellant Carri Robertson, appearing in her official capacity as the representative of the estate of the late Joseph Robertson. I will try to reserve two minutes of my time for rebuttal. This is a case of first impression. It involves a pretty unique procedural question. That reimbursement for appointed counsel following death of the defendant with an appeal pending. We think the court can easily resolve this case in the estate's favor by applying the general rule of abatement stated in the Oberlin case and also United States v. Rich that quote debt pending appeal of a criminal conviction abates not only the appeal but all proceedings in the prosecution from its inception. The reimbursement order that we're here about today is not a collateral proceeding in the district court below. In fact, this court already ruled that the district court's January 2016 order to reimburse counsel is not a collateral order. Mr. Robertson tried to take an interlocutory appeal from that order and the court dismissed it because that order doesn't meet the collateral order definition. So the reimbursement order is a proceeding in the prosecution from the inception of the indictment and we argue that the order abated with the indictment. Counsel remind me, did you file the appeal in this case? Did you file it? We filed this appeal, yes. Okay, but did you file an appeal from from Robertson's conviction? The federal defender filed that appeal. Right, okay. And did they identify the issues there? Yes, your honor. Was the CJA raised? It was. It was raised. It was one of the issues on appeal? Yes, your honor. Mr. Frenchlaw, does it make a difference that it was not part of the petition for certiorari? We don't, we don't think so, your honor, because the, I mean, the petition for certiorari did not address everything in the, in the, in the court's order, in this court's order affirming the convictions. We think really the question is whether or not that order to reimburse counsel abates with the indictment. And even though this court affirmed the reimbursement order on the merits, the effect of abating the indictment, of vacating the indictment, removes the statutory predicate, the authority really, for the district court to order both appointment and reimbursement of counsel. It doesn't depend on how you look at it in terms of a criminal proceeding. Usually paying the lawyer doesn't have very much to do. Perhaps it does in some cases, but generally not with the outcome. If, for example, Mr. Robertson had not died and the CJA appointed counsel was successful, I assume the counsel would be paid. Assume counsel was unsuccessful, does that mean that he gets the money back? Your honor, the reimbursement of appointed counsel, up until the point when Mr. Robertson passed away with the appeal pending, was an obligation that arose within the prosecution. And he certainly had an obligation to, if he had survived, to pay that, even if he had won at the Supreme Court, because the Supreme Court wouldn't have granted relief on that. But what we're dealing with here is the consequences of his death pending appeal and the application of the abatement doctrine. I'd point out that the court also, the district court below also, we would say, erred as a matter of law by finding that the funds that the government agreed previously it would refund to the estate were available to the defendant. But let me go back to the other issue. How do you distinguish the Rich case? Because in Rich we upheld receivership as surviving the abatement of the criminal case. And if anything, that seems closer to the criminal case than this kind of an order does. How do you distinguish it? Well, your honor, I distinguish Rich based on the court's basic factor for deciding that the voluntary agreement between the defendant and the prosecution. Well, that was true as to the temporary one. Was it true as to the permanent order? Yes, your honor. Yes, your honor. And in fact, at page 728 of the opinion, the court first of all says we're dealing with the permanent receivership because that's the one that's in effect. And it says, I'll quote, in short, because of his stipulation to a permanent receivership, Rich cannot now, after his death has abated his conviction, challenge the receiver's power to repay victims. So the way we read Rich, at least, the voluntary nature of that is dispositive. Well, but we also said on 727 that receivership continues regardless of abatement of the conviction because the receivership was not dependent in any way on Rich's conviction. So it's the independence from the conviction that makes it survive. And here, a CJA reimbursement order doesn't depend in any way on the conviction. I suppose in theory, you could do it even after an acquittal. Your honor, what we argue instead, though, is that the CJA order is dependent on the page 728. We think the Ninth Circuit's analysis there on page 728 is almost precisely analogous to this case. That's where Judge O'Scanlan's opinion looks at whether the restitution sentence abates. And the analysis is, to sentence the defendant to restitution, you have to have a predicate conviction. And when that conviction is abated, then it nullifies the subsequent restitution order. Right. But the CJA charge here doesn't depend on, doesn't turn on a fact of conviction. That's Judge Collins' point. Even if your client had been acquitted, he would still owe the reimbursement. But our argument, your honor, is that the CJA order does depend on the indictment. Well, right. But so does everything else that would follow from that. So, for example, if your client had misbehaved during the trial and had been fined during the trial for contempt, that the contempt might, well, and taken an interlocutory appeal, which we affirmed, the fact that the death of your client after the conviction wouldn't erase the fact that the obligation of the oath. I think that could probably still be charged in the estate. Well, the way the abatement principle is stated, your honor, it abates all proceedings in the How do you deal with the Second Circuit case where it's a bail forfeiture? And that's really dependent on the indictment. So under your theory for distinguishing Rich, you would say the Second Circuit is wrong then? No, your honor. What we say is that the bail order in Rich, excuse me, in Brooks is a collateral proceeding. This circuit holds that conditions of bail are subject to expressly by statute. It's not done under the collateral order doctrine. They're appealable as a right by statute. But that makes it, that's, I think, a powerful way of distinguishing the Brooks case. That's by statute a part of the prosecution that, you know, doesn't abate. The, our basic argument is that the indictment is necessary in order to order reimbursement of appointed counsel. Counsel, I haven't thought through all of this. I'm not, so it's an oddball question. But it occurs to me that perhaps the right of his executor, his wife, to appeal the everything else is gone, but that right may yet survive. Is there any impediment to us allowing the appeal of the CJA issue to go forward? Well, are you asking about the original order to reimburse counsel, your honor, or this one that the estate basically reimbursed counsel? Well, I think you could probably still, again, I haven't thought through all of this, but it seems to me that the issue on the merits is probably still alive and that the estate would have standing to raise it. Well, your honor, so very briefly, I mean, the Ninth Circuit already in a separate unpublished opinion affirmed the original CJA order. Okay, then the right to, okay, and that's right. I recall that now. So that means then that the merits are over, then the only question is whether the, is whether your client is liable. And so part of that, your honor, is that the estate, you know, is not a person that can be required to, can be ordered to pay reimbursement. And it all flows from the provisions in section 3006A that you need an indictment in order, in this case, the indictment was the basis for appointing counsel and the basis for reimbursement of counsel. I see I'm over time. I was hoping. Yeah, I'll give you a minute for rebuttal. So we will hear now from Mr. Nelson. Now I'm unmuted. Okay, we can hear you now. Good morning, your honor. May it please the court. Eric Nelson for the United States. The district court properly recognized that this was a case of first impression, this particular factual dilemma, yet appropriately relied on the Rich case and the Brooks case, the second circuit case you were inquiring about, and properly found that the CJA order derives out of 3006A. It doesn't have anything to do with the criminal prosecution. It is not a criminal remedy that is imposed based on indictment or conviction. It is simply. So now did the government oppose his effort to take an interlocutory appeal of what you're now contending is a collateral order? We did oppose that, yes. And what was the basis? Did you say it wasn't collateral, that it was part of the criminal proceeding and would become part of the judgment? I'm honestly trying to recall the base of our argument opposing the interlocutory appeal, but I think it had to do with the ripeness and the general principles regarding when interlocutory appeal is allowed. It certainly was right. There was a final order to pay the money back. And it isn't part of the criminal judgment as you're now contending. So it seems that your position today is inconsistent with the position you took on the interlocutory appeal. I would have to read that, Your Honor, and look at both our brief and the Ninth Circuit decision denying that interlocutory appeal. I would argue, however, that ultimately the CJA order was in fact appealed on the merits affirmed by the Ninth Circuit. And then the interlocutory appeal defendant, Joseph Robertson, did not seek a petition for rehearing or a petition for certiorari on that final Ninth Circuit ruling on the merits of the legitimacy of the CJA order. And so that stands as a final collateral order that has been subject to review. If the petition for certiorari had appealed the CJA order, would your position be different? I think we would have, again, we would have defended it on merits like we did in the merit appeal on the Ninth Circuit. We would argue that the district court judge made a proper inquiry. First, he referred this to a magistrate for a show-cause hearing where both the government and the federal defender presented evidence regarding available assets. The district court was careful not to include his wife's assets at that time when he was making the CJA inquiry because she did not consent to it in the CJA guidelines, direct the court to do that. So he made a careful determination of availability under the case law that he cites in this latest October 2019 CJA order update. Let me understand, do you agree that if he had taken a cert petition from the memo dispo on the CJA order and died while that was pending, then you would have agreed that his death pending that appeal would abate that aspect of it as well or not? I don't think it would abate and that's what the Rich and Brooks case instruct and that the court properly observed that those types of collateral orders because they are not born out of the criminal conviction or the criminal remedies imposed upon conviction that that would not abate. Is it true that the court could ask or enter a reimbursement order under the CJA even after an acquittal? Yes, and in fact there's a case we cite in our brief, I think it's Wilson, that actually had that exact holding that a defendant was required to pay the CJA order for the cost of his representation even after he was acquitted. I also would point your honors to the district court's discussion of the voluntary contractual nature of the CJA process and the magistrate order which I included in our supplemental excerpts of record actually recounts the history in this case of Mr. Robertson's affidavit, CJA affidavit requesting that he be appointed representation at the very time Judge Malloy appointed the defender to represent him. He specifically advised Mr. Robertson that if further investigation found he did have assets to afford counsel, the court could revoke the representation or require reimbursement of those costs under 3006A subsection f and that's precisely what happened. We went to trial in the first trial ended up in a mistrial and during that first trial information was relayed that Mr. Robertson had actually at the same time he was asking for free federal defender representation had hired three different attorneys on three different matters to prosecute civil litigation and that's what prompted the court to issue the show cause hearing and determine whether he had the financial ability to pay at least part of the cost of his representation. Assuming we uphold the order, who pays? Who makes the payment? I understood that the estate has no funds available given its other creditors. So who is on the hook? Well, the district court's October order is referring to these funds that Mr. Robertson already paid, the special assessment fee and some payments toward restitution. We also learned during the pendency of this appeal that Mr. Robertson did make two $300 monthly payments towards the CJA order. So those, the court found that those funds were paid personally by the defendant and when he ran it, you know, as he was mandated, when he dismissed the indictment, the restitution order, the special assessment order and the judgment of conviction at that time, that was in August 2019, the court specifically reserved the CJA order and if you look at 18 U.S.C. 3006A subsection C, it states that if at any time and I just want to emphasize at any time, the district court finds that there are funds available to pay cost of representation under the criminal justice act, he may then enter an order requiring full or partial reimbursement and that's exactly what happened in this case. He made the original CJA determination based on a full and accurate accounting of it. Hadn't you, had the government agreed already that those monies by virtue of the abatement should be returned? We did agree based on Rich that found that restitution payments are subject to abatement, that that abatement should apply. We did not raise the CJA issue, the court did that on its own, but 3006A subtitle C really best that discretion with the court. Are there other creditors of the estate who are trying to get money as well? I'm sorry, could you repeat that? Are there other creditors of the estate who are trying to get money as well? There may be. The district court found that these funds, once they're available and he cites a couple of cases that support the proposition that when you're doing these CJA determinations of availability, you do not have to engage in a full adversarial hearing. You do not have to consider adjacent issues of priority when you're making those determinations and he, Judge Molloy found that these monies that were paid in restitution and the special assessment were Mr. Roberts' own monies and so he could make a new finding now that the case has been remanded and these monies are going to be refunded to the defendant that that money was available to partially satisfy the CJA obligation. All right, thank you. I see your time has expired. We'll put a minute on the clock. Thank you, Your Honor. Two very brief points. First of all, in addition to agreeing that the restitution payments that have been made should be refunded to the estate, the government also represented to this court that upon that, the appeal would be moot. In other words, in fact, they used the exact words, there would then be no further relief for the court to order and we've argued that by representing to the court that the funds should be refunded to the estate and that there would be no further relief that the government has waived this claim. Secondly, on availability, the statutes authorizes reimbursement to be ordered from a person furnished representation. At this point, what we're dealing with is the interest of the estate because Mr. Robertson has passed away and the estate was not furnished representation, none of its beneficiaries were. Thank you, Your Honor. Thank you. Case just started will be adjourned.
judges: Bybee, Stearns, Collins